IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KAREN SUE ELMORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-21-212-GLJ** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Claimant Karen Sue Elmore requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations

1

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairments *are not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 58 years old at the time of the administrative hearing. (Tr. 36). She completed the eighth grade and later earned her GED. (Tr. 41, 62). She has past work experience as a mail clerk and sales clerk. (Tr. 21). Claimant alleges an inability to work since September 10, 2017, due to limitations imposed by back and knee pain, asthma, hypertension, hyperthyroidism, diabetes, gastroesophageal reflux disease ("GERD"), arthralgia, sciatica, and lumbago. (Tr. 588).

## Procedural History

From September 3, 2019, to September 6, 2019, Claimant protectively applied for disability insurance benefits and disabled widow's benefits under Title II (42 U.S.C. § 401, *et seq*.) as well as supplemental security income benefits under Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. Her applications were denied initially and upon reconsideration. On January 27, 2021, Administrative Law Judge ("ALJ") Michael Mannes conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated February 9, 2021. (Tr. 12-23, 36-72). The Appeals Council denied review, making the ALJ's opinion the Commissioner's final decision for the purpose of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. (Tr. 21-23). At step two he determined that the claimant had the severe impairments of degenerative disc

disease and dysfunction of major joints. (Tr. 15). Additionally, he found Claimant had the

nonsevere impairments of depression, bipolar, anxiety, obsessive-compulsive disorder,

obesity, diabetes mellitus, and GERD. *Id.* He found at step three that Claimant did not meet

any Listing. (Tr. 16). At step four he found that Claimant had the residual functional

capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) &

416.967(b), *i.e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently,

and could sit and stand/walk for six hours in an eight-hour workday. However, the ALJ

limited Claimant to only occasionally climbing ramps or stairs; never climbing ladders/

ropes/scaffolds; frequently balancing; occasionally stooping kneeling, crouching, or

crawling; and avoiding even moderate exposure to dust, odors, fumes, and pulmonary

irritants. (Tr. 17). The ALJ then concluded Claimant was not disabled because she could

return to her past relevant work ("PRW") as either a mail clerk or a sales clerk or,

alternatively at step five, that there was work she could perform in the national economy

such as office helper, cashier, II, or small product assembler. (Tr. 21-23).

## Review

Claimant contends that the ALJ erred by failing to discuss uncontroverted and/or

significantly probative evidence that he rejects and by failing to find an RFC that is

supported by substantial evidence. Specifically, Claimant contends that the ALJ's

discussion of the medical evidence was overly selective and ignored Claimant's mental

health problems, that the ALJ's finding that Claimant could stand or walk for six out of

eight hours of a workday is contrary to the evidence, and that the ALJ failed to consider

Claimant's obesity when formulating her RFC. The Court finds these contentions unpersuasive for the following reasons.

As to Claimant's physical impairments, the medical evidence in the record reveals that, prior to the alleged disability onset date of September 10, 2017, Claimant sought treatment from 2011 to 2016 for GERD, hypertension, hypothyroidism, mild persistent asthma, lumbago, and knee pain. (Tr. 721-43, 761-67, 781-84, 808-934). An MRI taken at Mercy Hospital in Fort Smith, Arkansas, on July 17, 2017, revealed a mild broad-based disc bulge and a small central disc protrusion. (Tr. 951-52). Nearly two years later, Dr. Norman McAlester treated Claimant on March 26, 2019, for epigastric abdominal pain at the McAlester Regional Health Center Emergency Department. (Tr. 960-65). On May 2, 2019, Cynthia Del Rosario, APRN, treated Claimant for recurring gastric pain (Tr. 976-83). On August 14, 2019, Ms. Rosario referred Claimant to Orthopedic for complaints of back pain and difficulty breathing related to muscle spasms in her back. (Tr. 1006-13). Claimant presented with chronic knee pain to Dr. McAlester at McAlester Regional Health Center Emergency Department on April 9, 2020, where he prescribed her painkillers, a knee immobilizer, and crutches, as well as instructions to follow up with her regular doctor. (Tr. 1124-28). On April 14, 2020, Claimant followed up on her knee pain with Maranda Byrd, APRN, who prescribed additional painkillers and advised that she would refer Claimant to Orthopedics if the pain did not improve. (Tr. 1150-57). On October 6, 2020, Claimant saw Lauren Wahlmeier, PA, at Mercy Clinic Orthopedic Surgery who found that Claimant had severe degenerative changes in the left knee and provided her with a corticosteroid injection, a referral to physical therapy, and instructions to follow up in two

months. (Tr. 1180-81). Two weeks later, Claimant saw Physical Therapist James Honey who noted that she arrived ambulatory, without an assistive device, and walked with a limp. (Tr. 1182-88). On October 22, 2020, Claimant saw Dr. Thomas Cheyne, MD, who noted her normal gait and diagnosed her with chronic bilateral sciatica with underlying mild canal foraminal stenosis and prescribed a topical painkiller with light activity and a home stretching program. (Tr. 1189-90).

As to Claimant's mental impairments, the medical evidence of record reveals that on May 2, 2019, Cynthia Del Rosario, APRN, saw Claimant for worsening depression and referred her to an in-house behavioral health specialist. (Tr. 976-83). On May 16, 2019, Claimant presented to Dr. Michael Collins, who then treated her for moderate recurrent major depression throughout the year. (Tr. 984-90, 1000-05, 1028-33, 1074-79). On July 14, 2020, Claimant saw APRN Mary Smith-Crase and complained of worsening depression and suicidal ideation in conjunction with intermittent compliance with her antidepressant medication regimen. (Tr. 1284-91).

On May 23, 2017, Dr. Theresa Horton, Ph.D., performed a consultative mental status examination and diagnosed her with late-onset dysthymia. (Tr. 940-43). Dr. Horton noted that Claimant walked into the appointment without assistance, albeit slowly, and appeared to sit comfortably. *Id.* On January 14, 2020, Claimant again saw Dr. Horton for a mental status examination. Tr (1051-54). Dr. Horton noted that Claimant drove herself to the appointment and walked into the appointment with the assistance of a walker. *Id.* Dr. Horton then diagnosed Claimant with late-onset dysthymia with anxious distress. *Id.* She also noted that Claimant appeared capable of simple and somewhat more complex tasks

but appeared to lack motivation or initiative to produce. *Id.* On January 10, 2020, Claimant presented for a consultative physical exam at Arkansas Occupational Health Clinic to Kelsey Haughton, PA-C, who noted that Claimant had a slow but steady gait and used a wheeled walker with a padded seat for rest when she gets tired. (Tr. 1038-1046).

State examiners determined initially and upon reconsideration that Claimant had the RFC to perform light work with no postural limitations, but that she must avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation. (Tr. 169-82, 217-34). As to her mental impairments, reviewing physicians initially rated her depression as severe, though this seems to be contradicted within the report as the analysis states that Claimant's "mental condition is rated as non-severe." (Tr. 176-77). Upon reconsideration, reviewing physicians considered a new allegation of severe anxiety but found it, as well as Claimant's depression, to be nonsevere. (Tr. 217-34).

At the administrative hearing, Claimant testified about her various symptoms, specifically noting her back pain and knee problems. (Tr. 45-47). When questioned about why she had not received any treatment for her knee, she testified that she did not have enough money to seek treatment. (Tr. 47). She then testified that, without an assistive device, she is only able to walk approximately ten steps before having to rest and recover her breath. (Tr. 48). She explained that she uses a wheelchair or wheeled walker to help ambulate and that the October 2020 record reflecting she had a normal gait occurred after she had received a shot that allowed her to walk normally for approximately two weeks. (Tr. 56-57). She also testified that she can only stand under her own power for around five

minutes, can only sit for approximately one hour before her legs begin to swell, and spends most of her day lying in bed. (Tr. 63-64).

In his written opinion at step four, the ALJ summarizes Claimant's hearing testimony before finding that her statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with treatment records. (Tr. 17). He then provides a summary of the medical evidence in the record from May 2, 2019, through December 29, 2020. (Tr. 17-21). The ALJ notes the state examiners' opinions, finding them largely consistent with the longitudinal evidence but finds that they should have included postural limitations and are therefore only partially persuasive. (Tr. 21). He also acknowledges the state psychologists' opinions, noting they initially found Claimant's mental impairments to be severe but downgraded those impairments to nonsevere upon reconsideration. *Id.* The ALJ recognized that the medical evidence indicated that Claimant had issues with depression but found that mental status examinations were regularly within normal limits and her depression was therefore nonsevere. *Id.* Accordingly, he found the state reviewing physician's opinion as to her mental impairment to be more persuasive at the reconsideration level where it was found to be nonsevere. *Id.* The ALJ then asserts that the assigned RFC is supported by the aforementioned medical evidence and ultimately concludes that Claimant is not disabled. (Tr. 21-23).

Claimant first contends that the ALJ erred in his RFC assessment by only selectively discussing the evidence that supports his conclusion while omitting diagnostic details in the evidence he does discuss. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996).

It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7. Here, the ALJ has fulfilled his duty. Claimant nevertheless asserts that the evidence does not support a finding that she can perform work at the assigned RFC level in light of her impairments.

Claimant places particular emphasis on an October 6, 2020, record that the ALJ briefly discusses as diagnosing Claimant with left knee osteoarthritis, but she contends he omitted detailed findings from her left knee x-ray during the same time. An ALJ may not mischaracterize an uncontradicted medical opinion by discussing only the parts of that opinion that support his conclusion. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). While the ALJ did not explicitly discuss each detail of the x-ray from October 6, 2020, he does discuss

9

the physician assistant's ultimate diagnosis, which included an evaluation of the x-ray and a diagnosis of left knee osteoarthritis for which he recommended a corticosteroid injection, physical therapy, and the use of a knee brace and walker for ambulation as needed. (Tr. 1181). The ALJ noted each of these findings and the treatment plan. (Tr. 19). Having closely reviewed the record, the Court finds nothing to indicate that the ALJ has mischaracterized this or any other portion of the record. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

Claimant next contends that the ALJ did not adequately discuss the relevant medical evidence and that his finding that Claimant could stand or walk for six out of eight hours a day is unsupported by substantial evidence. In support, Claimant points to those parts of the record that indicate greater deficiencies while ignoring those parts of the record that do not. While the ALJ's narrative discussion of the evidence is limited to only the relevant time frame, his RFC findings indicate that he considered Claimant's complaints and determined an RFC based on all of the evidence in the record. Specifically, the ALJ found, based on her complaints of hip, knee, and back pain, that she had postural limitations beyond those determined by the state examiners. (Tr. 21). "The ALJ was entitled to resolve . . . evidentiary conflicts and did so." *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) (*citing Haga*, 482 F.3d at 1208). The Court will not overturn the decision of the ALJ where, as here, it is supported by substantial evidence. *Hill v. Astrue*, 289 F. App'x 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record

and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The evidence does not reflect further limitations related to any of the claimant's medically determinable but nonsevere impairments, and the ALJ clearly considered them when he pointed to the evidence related to them, then assessed the opinion evidence in relation to this objective evidence. Likewise, the claimant points to no medical documentation providing further limitations other than her own reports. Because she points to no evidence other than her own assertions, the Court declines to find an error here. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. . . . [W]e cannot insist on technical perfection.").

Finally, Claimant contends that the ALJ failed to properly evaluate the impact Claimant's obesity has on her RFC. SSR 19-2p requires an ALJ to consider when assessing the RFC that "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately." Soc. Sec. Rul. 19-2p, 2019 WL 2374244, *4 (May 20, 2019). "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment(s)." *Id.* at *2. Here, the ALJ considered Claimant's obesity at step two but concluded it was not

severe. (Tr. 15). At step four, the ALJ set forth Claimant's height, weight, and BMI. (Tr. 18). He also discussed a January 10, 2020, exam by Kelsey Haughton, PA-C, and specifically points out that Claimant's morbid obesity likely aggravated her depression and other comorbidities. (Tr. 18). Further, the ALJ discusses the state examiners' opinions, who both considered Claimant's obesity and concluded that neither further limited her. (Tr. 21, 180, 231); *see Fluaitt v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4803226, at *4 (E.D. Okla. Sept. 30, 2019) (finding that an ALJ's consideration of the opinions of state agency physicians whose opinions take a claimant's obesity into account is "sufficient to establish that Claimant's obesity was considered with her other impairments in the RFC.") (*citing Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004)). The Court finds thus that the ALJ's discussion indicates that he acknowledged and considered Claimant's obesity when he determined her RFC.

### Conclusion

The Court finds that the decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Accordingly, the decision of the Commissioner is AFFIRMED.

**DATED** this 6th day of July, 2023.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**